UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Lakeview Management, Inc.;
Lakeview Neurorehabilitation
Center, Inc.; and Lakeview
Neurorehab Center Midwest, Inc.,
    Plaintiffs

    v.                                   Civil No. 07-cv-303-SM
                                         Opinion No. 2010 DNH 012
Care Realty, LLC; and
THCI Company, LLC,
    Defendants


**O R D E R**


Before the court are two motions filed by Lakeview, one for reconsideration and one for attorney's fees.  THCI objects. After hearing the motion for reconsideration, and considering the motion for fees, both motions are denied.


**Motion for Reconsideration**

Lakeview does not contest specific factual findings, but says the court erred in applying the installment-contract rule to the facts, and so erred in concluding that THCI's claim for unpaid additional rent was not barred by the applicable statute of limitations.  THCI counters that Lakeview has not pointed to a manifest error of law, and is merely reasserting arguments already considered and rejected.

"The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)). "[M]otions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (citing Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005)). "[A] manifest error is '[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004) (quoting BLACK'S LAW DICTIONARY 563 (7th ed. 1999)). However, "[t]he repetition of previous arguments is not sufficient to prevail on a Rule 59(e) motion." Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008) (quoting United States v. $23,000 in U.S. Currency, 356 F.3d 157, 165 n.9 (1st Cir. 2004)).

In its memorandum decision (document no. 139), the court relied upon General Theraphysical, Inc. v. Dupuis, 118 N.H. 277 (1978), and Pierce v. Metropolitan Life Insurance Co., 307 F.

Supp. 2d 325 (D.N.H. 2004), in determining that New Hampshire follows the installment-contract rule and that, in this case, a separate three-year limitations period began to run each time Lakeview made a payment of "additional rent" in an amount less than was owed.  Lakeview's argument for reconsideration stresses the following points: (1) the language in <u>Pierce</u> that appears to support application of the installment-contract rule in this case is mere dictum; and (2) more recent decisions by the courts surveyed in <u>Pierce</u> hold that the installment-contract rule should not be applied in cases like this.  Lakeview says that it was manifest error not to apply a "well-established" exception to the installment-contract rule that pertains when "a claim arises from a dispute over whether payments are owed under a lease or installment contract or over the formula for calculating those payments."  (Pl.'s Memo. of Law (document no. 142-2), at 2.)

    The New Hampshire Supreme Court has not expressly adopted an exception to the installment-contract rule, nor has it applied the described exception in a similar factual situation.  Moreover, the statute-of-limitations argument raised in Lakeview's motion for reconsideration was previously raised and rejected in a motion for summary judgment.  (<u>See</u> document no. 42.)

Relevant New Hampshire precedent is scarce, so Lakeview understandably relies on foreign decisions. But none is sufficiently analogous to this case to support, much less compel, a conclusion that the New Hampshire Supreme Court would recognize and apply an exception to the installment-contract rule to the facts presented here. Only one case cited by Lakeview, <u>Air Transport Ass'n of America v. Lenkin</u>, 711 F. Supp. 25 (D.D.C. 1989), involved a lease. The others concerned insurance premiums, <u>see</u> <u>Norwest Bank Minn. Nat'l Ass'n v. FDIC</u>, 312 F.3d 447 (D.C. Cir. 2002); pension benefits, <u>see</u> <u>Brehm v. Sargent & Lundy</u>, 384 N.E.2d 55 (Ill. App. Ct. 1978); <u>Kozak v. Ret. Bd. of Firemen's Annuity & Benefit Fund</u>, 524 N.E.2d 1049 (Ill. App. Ct. 1988); <u>Miele v. Pension Plan of N.Y. State Teamsters Conf. Pension & Ret. Fund</u>, 72 F. Supp. 2d 88 (E.D.N.Y. 1999); mortgage escrow payments, <u>see</u> <u>In re Mortgage Escrow Deposit Litig.</u>, Nos. 90 C 5816, <u>et al.</u>, 1994 WL 496707 (N.D. Ill. Sept. 9, 1994); and ERISA-governed long-term disability benefits; <u>see</u> <u>Miller v. Fortis Benefits Ins. Co.</u>, 475 F.3d 516 (3d Cir. 2007), <u>Baker v. The Hartford Life & Accident Ins. Co.</u>, No. 3:06-CV-1514-P, 2007 WL 2192298 (N.D. Tex. July 31, 2007). The lack of analogous landlord/tenant cases is significant, given the fact-intensive character and application of the installment-contract rule. <u>See</u> <u>Pierce</u>, 307 F. Supp. 2d at 329-33 (devoting considerable

4

attention to whether the installment-contract rule applies to payment of insurance benefits).

In addition, at least three cited cases, Air Transport, Norwest, and Mortgage Escrow, involved attempts by obligors to recover overpayments, rather than claims by obligees that they had been underpaid.  An obligor who makes a periodic payment after being told by the obligee how the obligee calculated the payment amount is situated somewhat differently than an obligee like THCI.  THCI was receiving periodic payments from Lakeview, but Lakeview represented (via the estoppel certificate and the cover memos it sent with some of its rent checks) that it was calculating the payment amounts as prescribed by the lease terms, when in fact Lakeview was using a different and unauthorized formula, to its own substantial benefit.

The events triggering application of the installment-contract-rule exception in the cases Lakeview cites are also readily distinguishable from the circumstances of this case. Lakeview would have the statute of limitations begin to run on the day when THCI first received a periodic payment of additional rent based on the unauthorized calculation.  That position, however, ignores the estoppel certificate, in which Lakeview disavowed any undisclosed side agreements altering the terms of

5

the lease as disclosed, and it ignores the fact that at least some of Lakeview's non-conforming lease payments were made under cover memos stating that the payments were in conformity with the lease.  In other words, Lakeview ignores factors that effectively concealed its alternative, unauthorized, calculation of additional rent, and the alleged bases for it.

     This is not a case like <u>Air Transport</u>, where the party seeking the benefit of the installment-contract rule had been put on notice, at the time of the first alleged overpayment, of the lease interpretation it later claimed to be wrong.  <u>See</u> <u>Norwest</u>, 312 F.3d at 454 (citation omitted) ("In [<u>Air Transport</u>], the district court, interpreting District of Columbia law, held that the limitations period for a tenant's claim of overpayment of rent based on the landlord's alleged misinterpretation of a lease provision commenced when the tenant first received notice of the landlord's interpretation.").  In a similar vein, the event that triggered the running of the statute of limitations in <u>Norwest</u> or, conversely, the event that prevented the plaintiff from gaining the benefit of the installment-contract rule, was a miscalculation of the premiums the defendant charged the plaintiff which, in turn, was based on the defendant's erroneous interpretation of a statute.  <u>See</u> 312 F.3d at 450.  In <u>Norwest</u>, as in <u>Air Transport</u>, at the time of the first contested payment,

the party seeking the benefit of the installment-contract rule knew or had constructive knowledge of the specific basis for the calculation it later challenged, which, in turn, placed that party on notice of a dispute over contract interpretation or statutory construction.  Here, by contrast, Lakeview did not clearly inform THCI of the specific, different, basis upon which it was calculating additional rent, and, in fact, concealed the actual formula it used.  The bottom line is this: Lakeview has identified no authority, controlling or otherwise, for the proposition that an obligor purportedly operating under an undisclosed agreement with the obligee's predecessor in interest, who also represents to the successor obligee that the lease-prescribed calculation is in effect, but who in fact is not honoring that lease provision, is, nevertheless, entitled to the benefit of an exception to the installment-contract rule.  Accordingly, Lakeview's motion for reconsideration is denied.

There are two operative leases in this case — the New Hampshire lease and the Wisconsin lease.  The New Hampshire lease is subject to the New Hampshire statute of limitations, while the Wisconsin lease is subject to the Wisconsin statute of limitations.  Each lease independently requires Lakeview to pay the full amount of rent for both the New Hampshire and Wisconsin facilities.  THCI is entitled to six years of unpaid additional

rent, for both facilities, so long as its suit under the Wisconsin lease is not barred by Wisconsin's six-year statute of limitations. It is not.

The court's application of the installment-contract rule to the facts of this case does not "amount[] to a complete disregard of [Wisconsin] law." Venegas-Hernandez, 370 F.3d at 195. In Jensen v. Janesville Sand & Gravel Co., 415 N.W.2d 559 (Wis. Ct. App. 1987), the Wisconsin Court of Appeals recognized that state's adherence to the installment-contract rule, id. at 561, as well as this exception: "If a single total breach occurs, the right to bring an action accrues at that time and the statute of limitations begins to run." Id. at 562 (quoting Segall v. Hurwitz, 339 N.W.2d 333, 343 (Wis. Ct. App. 1983)). The plaintiff in Jensen brought suit against his former employer to collect a pension more than six years after his employer told him "that his pension had been terminated, there was no intention to restore the pension, he was completely removed from the pension plan, and the board had refused to restore his payments." 415 N.W.2d at 561. The employer in Jensen was held, under Wisconsin law, not to have committed a single total breach sufficient to trigger application of the exception to the installment-contract

rule. Under that standard, Lakeview surely has not.[1] Accordingly, THCI's action under the Wisconsin lease to recover six years of unpaid additional rent, for both facilities, is not barred by the Wisconsin statute of limitations.

## Interest at the "Overdue Rate"

The parties have also engaged on another issue: whether THCI is entitled to interest on the unpaid rent Lakeview owes, calculated at the "overdue rate" defined in the lease. It is.

The overdue rate is addressed in three provisions of the lease, two of which are at issue here. The first provides:

> **3.2.3. Deficits.** If the Additional Rent, as finally determined for any calendar year (or portion thereof), exceeds the sum of the quarterly payments of Additional Rent previously paid by Lessee with respect to said calendar year, within thirty (30) days after such determination is required to be made hereunder, Lessee shall pay such deficit to Lessor and, if the deficit exceeds five percent (5%) of the Additional Rent which was previously paid to Lessor with respect to said calendar year, then Lessee shall also pay Lessor interest on such deficit at the Overdue Rate from the date that such payment should have been made by Lessor [sic] to the date that Lessor receives such payment.

---

[1] Messner Manor Associates v. Wisconsin Housing & Economic Development Authority, 555 N.W.2d 156 (Wis. Ct. App. 1996), on which Lakeview relies, is inapposite. In that case, the court did not rule that the statute of limitations began to run as a result of the defendant's breach of a contract. Rather, the court ruled that there was no breach in the first instance. See id. at 159-60.

(Def.'s Ex. C., at 20.)  The second relevant section provides:

> **16.2 <u>Remedies</u>.**
>
> . . . .
>
> **(d)**  In addition to all of the rights and remedies of Lessor set forth in this Lease and the other Lease Documents, if Lessee shall fail to pay any rental or other charge due hereunder (whether denominated as Base Rent, or otherwise) within ten (10) days after same shall have become due and payable, then and in such event Lessee shall also pay to Lessor **(i)** a late payment service charge (in order to partially defray Lessor's administrative and other overhead expenses) equal to two hundred-fifty ($250) dollars and **(ii)** to the extent permitted by applicable law, interest on such unpaid sum at the Overdue Rate; it being understood, however, that nothing herein shall be deemed to extend the due date for payment of any sums required to be paid by Lessee hereunder or to relieve Lessee of its obligation to pay such sums at the time or times required by this Lease.

(<u>Id.</u> at 79.)

Lakeview argues that: (1) Section 3.2.3. does not apply to the facts of this case; (2) Section 16.2(d) is a general provision that conflicts with, and is therefore governed by, the more specific Section 3.2.3.; and (3) recovery of interest at the overdue rate is barred by equity, because THCI sat on its claim for underpayment of additional rent.  THCI counters that: (1) it is entitled to the overdue rate under both Sections 3.2.3. and

10

16.2(d); (2) those provisions are not in conflict; and (3) equity compels Lakeview's payment of interest at the overdue rate.

It is not clear that Section 3.2.3. applies to the facts of this case.  That lease provision appears to have been intended to encourage Lakeview to make a reliable estimate of the additional rent due to THCI, and to penalize it for erroneous estimates made in its own favor.  THCI's unpaid-rent claim is not that Lakeview made erroneous quarterly estimates of the additional rent owed; rather it claims that Lakeview made erroneous calculations of both its quarterly and its annual additional rent obligation.

It is not necessary, however, to determine whether THCI is entitled to the overdue interest rate under Section 3.2.3., because it is plainly entitled to the overdue rate under Section 16.2(d), and Section 16.2(d) is not trumped by Section 3.2.3. Section 3.2.3. is consistent with Section 16.2(d), providing a separate but similar incentive to make reliable quarterly estimates upon pain of incurring interest obligations at the overdue rate should the actual amount owed turn out to be more than five percent greater than the quarterly estimates.  Nothing purports to limit the applicability of the overdue rate to the situation described in Section 3.2.3.  Section 16.2(d) provides a remedy should Lakeview fail to make full rent payments in a

timely fashion, "in addition to all of the rights and remedies of the Lease set forth in the Lease."  The fact that consistent remedies are available for two similar breaches does not bring Sections 3.2.3. and 16.2(d) into conflict and, so, none of the canons of construction Lakeview invokes are applicable.

   Finally, regarding the equities, the court notes that the lease is relatively clear about giving THCI the right to make a claim for underpayment of rent, at its discretion, during the lease term and, of course, subject to applicable legal limitations.  THCI had rational business reasons to defer, or not to press the issue unduly, while attempting to reach overall agreement on a number of other pending issues.  Lakeview was well aware, early on in the relationship, that its additional rent payments were considered suspect by THCI, and was also aware that it might well be called upon at a future date to resolve the matter by making up any deficiencies.  Lakeview was fully capable of accelerating resolution of that issue had it chosen to do so – either through negotiation or a declaratory judgment action. That it chose to pursue a strategy of continuing effort to resolve all issues in a global agreement, while not clearly disclosing precisely how its additional rent calculations differed from the method called for by the lease, militates against a finding that THCI's deferral somehow misled Lakeview or

induced some type of reasonable reliance by Lakeview upon the validity or effectiveness of the unauthorized additional rent calculations.

Accordingly, THCI is entitled, under Section 16.2(d), to interest on Lakeview's late payment of additional rent at the overdue rate.

## Motion for Attorney's Fees

Lakeview seeks to recover attorney's fees incurred to secure the court's ruling that it validly extended its lease with THCI.

A motion for attorney's fees must "specify the . . . statute, rule, or other grounds entitling the movant to the award." FED. R. CIV. P. 54(d)(2). Here, Lakeview bases its claim on the common law of New Hampshire. In New Hampshire, "[t]he general rule . . . is that each party to a lawsuit is responsible for payment of his or her own attorney's fees." Van Der Stok v. Van Voorhees, 151 N.H. 679, 684 (2005) (quoting Clipper Affiliates v. Checovich, 138 N.H. 271, 277 (1994)). An exception to that rule applies "where an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention." Van Der Stok, 151 N.H. at 684 (quoting Funtown

USA, Inc. v. Town of Conway, 129 N.H. 352, 354 (1987)).  In such cases, "an award of counsel fees on the basis of bad faith is appropriate."  Van Der Stok, 151 N.H. at 684.

There are at least two reasons why Lakeview is not entitled to recover attorney's fees.  First, THCI did not force Lakeview to seek judicial assistance to secure its right to extend the lease.  It exercised its option to extend the lease five months before it filed suit, pursuant to its rights under the lease. Lakeview's suit was not based upon an effort by THCI to repossess the property at the end of the fixed term.  Rather, Lakeview's suit seemed largely premised upon its (mistaken) belief that THCI was obligated to proffer some sort of "acceptance" of its exercise of its options.  The circumstances of this case are vastly different from those in which attorneys' fees have been awarded to plaintiffs forced to litigate to secure clearly defined and established rights.  See Funtown USA, Inc. v. Town of Conway, 127 N.H. 312, 315-16 (1985) (water-slide developer forced to litigate when municipality repeatedly delayed issuance of building permit, thus buying time to pass a zoning ordinance that would prohibit applicant's intended use); Harkeem v. Adams, 117 N.H. 687, 692-93 (1977) (unemployment compensation applicant forced to litigate when state agency denied benefits for reasons previously rejected by superior court).

Lakeview not forced to litigate to secure its lease extension – it exercised its right to extend the lease before it ever filed suit, and THCI had not moved to evict Lakeview or take possession of the premises (it was Lakeview that insisted that transition planning begin). And, Lakeview's right to exercise its option to extend the lease, under the circumstances, was hardly "a clearly defined and established right." Van Der Stok, 151 N.H. at 684. Under ordinary circumstances, the lease would have given Lakeview a clearly defined and established right to extend by notifying THCI of its intent to do so in a timely manner. But here, given that Lakeview was in default, due to its unilateral and undisclosed practice of paying additional rent at a rate other than that specified by the lease documents, it cannot be said that Lakeview's right to extend the lease was "clearly established" and subject to no legal doubt or reasonable contest. The court ruled that the lease was validly extended, but only after careful consideration of the pertinent facts and application of equitable estoppel principles, based upon THCI's own manipulative conduct.

Because Lakeview was not forced to seek judicial assistance to vindicate clear rights that ought to have been respected, and because its right to exercise its option to extend the lease was far from clearly defined and established under the factual

circumstances, Lakeview is not entitled to attorney's fees under the doctrine established in <u>Harkeem v. Adams</u>.

## Conclusion

For the reasons given, Lakeview's motion for reconsideration (document no. 142) and its motion for attorney's fees (document no. 158) are both denied. The clerk of the court shall enter judgment in accordance with this order, and the court's memorandum order of March 31, 2009, and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 22, 2010

cc: Christopher H. M. Carter, Esq.
    Daniel M. Deschenes, Esq.
    Ovide M. Lamontagne, Esq.
    Jonathan M. Shirley, Esq.
    Leigh S. Willey, Esq.